**[Cite as *State v. Stutz*, 2020-Ohio-6959.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiffs-Appellee | : | Appellate Case No. 28705 |
| | : | |
| v. | : | Trial Court Case No. 2019-CRB-1847 |
| | : | |
| GINGER E. STUTZ | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of December, 2020.

. . . . . . . . . . .

CHRISTINE L. BURK, Atty. Reg. No. 0050559, City of Miamisburg Prosecutor's Office, 10 North First Street, Miamisburg, Ohio 45342
　　　Attorney for Plaintiff-Appellee

CHARLES M. BLUE, Atty. Reg. No. 0074329, 401 East Stroop Road, Kettering, Ohio 45429
　　　Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Ginger E. Stutz appeals from her conviction following a bench trial on one count of aggravated menacing, a first-degree misdemeanor.

{¶ 2} In her sole assignment of error, Stutz challenges the legal sufficiency of the State's evidence to sustain her conviction.

{¶ 3} The record reflects that Stutz is a former Dayton police officer. The charge against her stemmed from comments she made to her son, Sean Stutz, during a November 9, 2019 telephone conversation. At trial, Sean testified that his mother told him that "she thinks the police department is corrupt and that Rick is corrupt." (Trial Tr. at 10.) She proceeded to tell her son, "If I had a gun on me right now, I would shoot Rick in the f***ing face." (*Id.* at 13.) Although Stutz had retired from the Dayton Police Department in 2017, Sean assumed that she was referring to the Dayton Police Department and Police Chief Richard Biehl. (*Id.* at 10-12, 14.) Stutz was crying and in an emotional state while on the telephone. (*Id.* at 16.) She did not own a gun, however, and to Sean's knowledge she did not have one in her possession on November 9, 2019. (*Id.* at 14-15.)

{¶ 4} Sean nevertheless was concerned about his mother's comment. (*Id.* at 12.) She had been acting "erratic" prior to the call, and he was worried about her mental state. (*Id.* at 10-11.) He explained: "There were times that she would think there's cameras in my bedroom back when I lived with her. She thought there were cameras in the car. She thought that I was working with Rick and that our whole family was. She thinks the police department was in on it too, a variety of different things." (*Id.* at 11.) As a result of his concerns, Sean called Jimmy Howard, a long-time family friend who also was with the Dayton Police Department. (*Id.* at 12.)

**{¶ 5}** Howard testified that he had known Stutz for roughly 30 years and had worked with her at the Dayton Police Department. In Howard's opinion, Stutz started "getting a little paranoid" toward the end of her career. (*Id.* at 24.) With regard to the incident in question, Howard stated that he was concerned when Sean told him what Stutz had said on the phone. Howard took it seriously and contacted his supervisor, Sergeant Aaron Fraley, about it. (*Id.* at 27-28.) Lieutenant James Mullins also was told what Stutz had said, and he contacted his own supervisor. (*Id.* at 31.) Mullins testified that police officers were assigned to guard Chief Biehl's house as a result of what Stutz told her son. (*Id.* at 31-32.)

**{¶ 6}** The next witness was police officer Matthew Brown. He testified that he was assigned to watch Chief Biehl's house on the night of November 9, 2019. While doing so, he saw a car matching the description of Stutz's vehicle, a black Buick MKX, start to turn toward Chief Biehl's house near midnight. The vehicle turned around in the cul-de-sac and sped away after apparently seeing Brown's marked police cruiser. (*Id.* at 35-38.)

**{¶ 7}** Chief Biehl testified that he knew Stutz when she was employed with the police department. According to Chief Biehl, he only occasionally interacted with her through his job. He testified that Stutz tried multiple times to engage in personal conversation or a personal relationship with him despite being ordered not to contact him. (*Id.* at 58.) She eventually was suspended multiple times, and efforts were made by the police department to get her "some kind of psychological assessment." (*Id.* at 58-59.) Chief Biehl testified that Stutz also would send him text messages and occasionally call him. On one occasion in November 2017, she left him a voice mail about the two of them getting married and wanting to know the details. (*Id.* at 59, 63.) In her messages, Stutz at

times referred to Chief Biehl as "Rick." (*Id.* at 60.)

{¶ 8} With regard to what Stutz told her son on the telephone, Chief Biehl took it seriously after being told of the comments. (*Id.* at 65.) He was particularly concerned because he knew Stutz to be delusional, obsessive, and lacking in impulse control. (*Id.*) Chief Biehl testified that Stutz carried a firearm when she worked for the police department and that there was no legal impediment to her purchasing a firearm. (*Id.* at 66.)  He recalled two assistant chiefs, Matt Carper and Eric Henderson, telling him what Stutz had told her son within minutes of each other. (*Id.* at 74.)

{¶ 9} Following Chief Biehl's testimony, defense counsel made a Crim.R. 29 motion for acquittal, which the trial court overruled. (*Id.* at 84.) The trial court took the matter under advisement and later made a finding of guilt. While acknowledging that "this was a close call," the trial court found sufficient evidence to prove beyond a reasonable doubt that Stutz committed the offense of aggravated menacing in violation of R.C. 2903.21(A). The trial court imposed a partially suspended jail term with electronic home monitoring and other conditions, including a mental-health assessment, no contact with Chief Biehl, and no possession of firearms. The trial court denied a motion to stay execution of Stutz's sentence pending appeal.

{¶ 10} In her assignment of error, Stutz contends the State presented legally insufficient evidence to sustain her conviction. For purposes of appeal, Stutz does not dispute that her comment about shooting "Rick" in the face if she had a gun qualified as a threat to cause serious physical harm under the aggravated-menacing statute. *See State v. Collie*, 108 Ohio App.3d 580, 582, 671 N.E.2d 338, 339 (1st Dist.1996) ("Collie's statement, '[i]f I had a gun, I would shoot you,' is what is known in law as a conditional

threat. A conditional threat can constitute a violation of the menacing laws."). She argues, however, that she did not *knowingly* cause Chief Biehl to believe she would cause him serious physical harm because her comment was not reasonably calculated to reach the police chief, as she had no reason to believe the comment would be conveyed to him. Stutz also argues that the State failed to establish venue because there is no evidence from which it can be found that any element of the offense occurred within the territorial jurisdiction of the Miamisburg Municipal Court.

{¶ 11} When a defendant challenges the sufficiency of the evidence, she is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 12} With the foregoing standards in mind, we find legally sufficient evidence to support Stutz's conviction. Viewing the evidence in a light most favorable to the State, we believe a rational trier of fact could have found the essential elements of aggravated menacing proven beyond a reasonable doubt. The aggravated-menacing statute provides in relevant part: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person[.]"

R.C. 2903.21(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 13} The aggravated-menacing statute does not require a threat to be made directly to the victim. *State v. Tipton*, 2d Dist. Montgomery No. 28602, 2020-Ohio-3680, ¶ 11. A threat "may be made indirectly if there is evidence to support the conclusion that the offender knew the threat would probably reach the victim." *State v. Scott*, 7th Dist. Mahoning No. 07 MA 152, 2009-Ohio-4961, ¶ 20. The requirement of a probability that the threat will be conveyed to the victim stems from the "knowingly" mens rea, which requires proof that "the person's conduct probably will cause a certain result."

{¶ 14} While we agree with the trial court's assessment that this is a close case, we find legally sufficient evidence to support a finding that Stutz was aware her comment to her son probably would reach Chief Biehl. The record contains evidence that Stutz, a former Dayton police officer, had spoken to her son about "Rick" on more than one occasion. (Trial Tr. at 11.) On the record before us, it was reasonable for Sean to infer that Stutz meant Chief Biehl, and Stutz reasonably should have expected him to interpret her comment about shooting "Rick" as a reference to the police chief. The record also contains evidence that Stutz believed Sean was "working with Rick" and that Dayton police officer Jimmy Howard was a close friend of Stutz to the point of being "almost like a family." (*Id.* at 11, 23). Given Stutz's history of apparent mental-health issues, about which Sean was aware, as well as Stutz's belief that Sean was "working with" Chief Biehl against her and the Stutz family's friendship with officer Howard, the record contains legally sufficient evidence to support a finding that Stutz should have known that Sean

probably would relay her threat to the police department and that it would reach Chief Biehl.

{¶ 15} As for venue, R.C. 2901.12(A) provides for a criminal trial to be held "in the territory of which the offense or any element of the offense was committed."[1] In a menacing case, venue is proper where the offender made the threat or where the victim heard the threat. *State v. Dengg*, 11th Dist. Portage No. 2008-P-0063, 2009-Ohio-4101, ¶ 34; *Fairfield v. McRoberts*, 100 Ohio App.3d 476, 478, 654 N.E.2d 370 (12th Dist.1995). "When the offense or any element of the offense was committed in [a] * * * motor vehicle in transit, and it cannot reasonably be determined in which jurisdiction the offense was committed, the offender may be tried in any jurisdiction through which the * * * motor vehicle * * * passed." R.C. 2901.12(B).

{¶ 16} Here Sean testified that he was at a Miamisburg car dealership with Stutz just before the phone call at issue. (Trial Tr. at 9.) Sean and his mother left the dealership in separate cars. (*Id*.) He received the telephone call from his mother less than five minutes after they pulled out of the lot. (*Id*. at 15.) When defense counsel suggested to Sean that his mother was traveling south on Interstate 75 at the time, Sean responded that he did not know where she was when she called. (*Id*. at 15.) Under these circumstances, however, it is reasonable to infer that Stutz either remained in Miamisburg when she called or was traveling in her car, which at a minimum had passed through

[1] In response to Stutz's Crim.R. 29 motion, the trial court stated that it did not perceive her to be raising a venue issue. (Trial Tr. at 83.) As part of the motion, however, defense counsel did argue that "Sean Stutz testified that he was at CarMax; however, no one knows where [the defendant] was" at the time of the telephone call. (*Id*. at 82.) The prosecutor construed this argument as raising a venue issue. (*Id*.). We agree and conclude that Stutz preserved the issue below by raising it in her Crim.R. 29 motion.

Miamisburg. Therefore, the record contains evidence to support a finding that venue was proper in the Miamisburg Municipal Court.

{¶ 17} Stutz's assignment of error is overruled, and the judgment of the Miamisburg Municipal Court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Christine L. Burk
Charles M. Blue
Hon. Robert W. Rettich, III