[Cite as *State v. Foster*, 2021-Ohio-393.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-20 |
| | : | |
| v. | : | Trial Court Case No. CRB2000526 |
| | : | |
| LARRY FOSTER | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 12th day of February, 2021.

. . . . . . . . . . .

BETSY A. DEEDS, Atty. Reg. No. 0076747, Assistant Prosecuting Attorney, City of Fairborn Prosecutor's Office, 510 West Main Street, Fairborn, Ohio 45324
    Attorney for Plaintiff-Appellee

KAREN S. MILLER, Atty. Reg. No. 0071853, P.O. Box 341274, Dayton, Ohio 45343
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-appellant, Larry Foster, appeals from his aggravated menacing conviction following a bench trial in the Fairborn Municipal Court. In support of his appeal, Foster contends that the trial court erred in overruling his Crim.R. 29 motion for acquittal because his conviction was not supported by sufficient evidence. For the reasons outlined below, we disagree with Foster's claim; therefore, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

**{¶ 2}** On March 27, 2020, Foster was charged by citation with one count of aggravated menacing in violation of R.C. 2903.21, a misdemeanor of the first degree. The charge stemmed from allegations that Foster spit at and made threats to the employees of an Arby's restaurant located on Colonel Glenn Highway in the city of Fairborn, Greene County, Ohio. Foster pled not guilty to the charge and the matter proceeded to bench trial on April 16, 2020.

**{¶ 3}** During trial, the State presented the testimony of Grant Gleason, the general manager of the Colonel Glenn Arby's. Gleason testified that on the day in question, his restaurant only provided drive-thru and carry-out services due to the COVID-19 pandemic. Gleason testified that the restaurant's dining room was closed, but that customers could come inside to register or pick up a carry-out order.

**{¶ 4}** With regard to the incident in question, Gleason testified that at about 6:23 p.m., he was in his car getting some papers when he saw a gentlemen, later identified as Foster, walk into his restaurant. Gleason testified that he followed Foster into the restaurant, went behind the counter, and asked Foster what he would like to

order. Gleason testified that Foster became agitated and told him that he was not getting anything and that he was "not fucking leaving." Trial Trans. (Apr. 16, 2020), p. 12-13. Gleason then explained to Foster that if Foster were not going to purchase anything, he would have to leave the restaurant due to the COVID-19 restrictions. According to Gleason, Foster became further agitated and said "I can fucking be here if I want to, you know, I don't have to leave. I'll stay here as long as I want to." Trial Trans., p. 13.

{¶ 5} Gleason testified that, at this point, he told Foster that if Foster would not leave the restaurant, he would call the police to have Foster escorted out. Gleason testified that Foster then took a bite of a dinner roll that Foster was carrying in a Styrofoam cup and spit it out in Gleason's direction. Gleason testified that, as he continued instructing Foster to leave, Foster turned around and spit again, this time at the restaurant's soda machine. Foster then spit a third time in the direction of an employee who was sitting in a nearby booth. Gleason testified that he was very concerned about Foster's spitting due to the COVID-19 pandemic. Gleason testified that Foster's conduct was not only gross, but "almost threatening." Trial Trans., p. 16.

{¶ 6} After Foster's spitting, Gleason pulled out his phone and started to call 9-1-1. Gleason testified that when Foster saw him calling the police, Foster said "I'm going to get my gun and I'm going to smoke your ass." Trial Trans., p. 16. Gleason testified that Foster made this threat three times while fiddling around in his pocket. Gleason testified that Foster's conduct placed him in fear and that he "had a reason to believe [Foster] had a gun and was going to pull it and shoot [him]." Trial Trans., p. 17. Gleason testified that Foster eventually left the restaurant when he spotted the police approaching from across the street.

{¶ 7} The State also presented the testimony of Arby's employee Chelsea Wise. Wise testified that she was sitting in the lobby of the Colonel Glenn Arby's when Foster entered the restaurant. Wise testified that she heard Gleason politely ask Foster if he was going to purchase anything. Wise also heard Gleason tell Foster that Foster would have to leave the restaurant if he was not going to make a purchase. Wise testified that Foster responded by saying that "he can do what the F he wants[.]" Trial Trans., p. 29.

{¶ 8} Wise testified that as Gleason kept asking Foster to leave, Foster was walking around the restaurant spitting food out of his mouth everywhere. Wise then testified that Foster "said something 'bout that he was going to smoke all of us." Trial Trans., p. 30. Wise testified that Foster's "smoke all of us" comment made her feel scared. Thereafter, on cross-examination, Wise testified that she did not attempt to call the police herself because she was not working at the time, and because she knew that Gleason was going to make the call as the general manager.

{¶ 9} For its final witness, the State called Officer Kyle Blocher of the Fairborn Police Department. Blocher testified that he was right across the street from the Colonel Glenn Arby's when he was dispatched to the restaurant on a call of an unwanted subject. Blocher testified that the Arby's manager pointed to Foster as the suspect. Blocher testified that another officer, Officer Hiles, gave multiple commands for Foster to stop, but that Foster continued to walk away. Blocher testified that he went back to the Arby's to investigate what had happened while Hiles continued pursuing Foster. Blocher testified that he spoke with both Gleason and Wise about the incident. From that investigation, Blocher determined that Foster was going to be charged with aggravated menacing. Blocher then told Hiles about the charge, and Hiles thereafter placed Foster under arrest.

{¶ 10} Following this testimony, the State rested its case. Foster then moved for a Crim.R. 29 acquittal of the aggravated menacing charge. The trial court overruled Foster's motion.

{¶ 11} After his Crim.R. 29 motion was overruled, Foster testified in his defense. Foster testified that he intended to order food at the Colonel Glenn Arby's, but the employees discriminated against him by not letting him place an order and by threatening to call the police. Foster admitted to getting frustrated by the employees' alleged conduct, but denied making any threats. Foster specifically denied saying that he was going to get a gun and "smoke their asses." Trial Trans., p. 48.

{¶ 12} After the defense rested, the trial court found Foster guilty as charged. In reaching its verdict, the trial court noted that it found Gleason's testimony "quite credible." Trial Trans., p. 50. The trial court then proceeded immediately to sentencing and ordered Foster to serve 180 days in jail. The trial court suspended 90 of those days on the condition that Foster exhibit good behavior for two years. The trial court also gave Foster 20 days of jail-time credit for time served, waived court costs, and banned Foster from the Colonel Glenn Arby's for two years.

{¶ 13} Foster now appeals from his conviction, raising a single assignment of error for review.

## Assignment of Error

{¶ 14} Under his sole assignment of error, Foster contends that the trial court erred in overruling his Crim.R. 29 motion for acquittal because his conviction was not supported by sufficient evidence. Specifically, Foster claims that the State failed to present

evidence establishing that he caused another person to believe that he would cause the person serious physical harm. We disagree.

{¶ 15} " 'A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.' " *State v. Myers*, 2d Dist. Darke No. 2019-CA-22, 2020-Ohio-4325, ¶ 15, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. "When a defendant challenges the sufficiency of the evidence, [he] is arguing that the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law." *State v. Stutz*, 2d Dist. Montgomery No. 28705, 2020-Ohio-6959, ¶ 11, citing *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. " 'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*

{¶ 16} As previously noted, Foster was convicted of aggravated menacing in violation of R.C. 2903.21(A). Pursuant to that statute: "No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person[.]" R.C. 2903.21(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a

certain result or will probably be of a certain nature." R.C. 2901.22(B). "Serious physical harm to persons" includes the following:

> (b)  Any physical harm that carries a substantial risk of death;
>
> (c)  Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d)  Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e)  Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5)(b)-(e).

{¶ 17} After a thorough review of the record, we find that the State presented legally sufficient evidence to support Foster's aggravated menacing conviction. The State's evidence supported a finding that Foster threatened Gleason multiple times by saying: "I'm going to get my gun and I'm going to smoke your ass." Trial Trans., p. 16. The State's evidence also established that Foster was agitated and fiddling around in his pocket when he made this threat. Foster also previously spit food at Gleason and at one of Gleason's employees. Gleason testified that Foster's conduct placed him in fear and that he "had a reason to believe [Foster] had a gun and [that he] was going to pull it and shoot [him]." Trial Trans., p. 17.

{¶ 18} This evidence was legally sufficient to establish that Foster knowingly caused Gleason to believe that Foster would cause serious physical harm to him in

violation of R.C. 2903.21(A). Foster's threat that he was "going to get [his] gun" and "smoke [Gleason's] ass" could reasonably fit within any of the definitions of serious physical harm under R.C. 2901.01(A)(5)(b)-(e). Therefore, viewing the evidence in a light most favorable to the State, we believe that a rational trier of fact could have found that the essential elements of aggravated menacing were proven beyond a reasonable doubt.

{¶ 19} Foster's sole assignment of error is overruled.

## Conclusion

{¶ 20} Having overruled Foster's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Betsy A. Deeds
Karen S. Miller
Hon. Beth W. Cappelli