[Cite as *State v. Sickels*, 2023-Ohio-1081.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | |
|---|---|
| STATE OF OHIO : | |
| : | |
| Appellee : | C.A. No. 2022-CA-60 |
| : | |
| v. : | Trial Court Case No. 21-CR-0611 |
| : | |
| DARRELL A. SICKELS III : | (Criminal Appeal from Common Pleas Court) |
| : | |
| Appellant : | |
| : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 31, 2023

. . . . . . . . . . .

IAN A. RICHARDSON, Attorney for Appellee

ALANA VAN GUNDY, Attorney for Appellant

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Darrell A. Sickels III appeals from his conviction, following a jury trial, on one count of aggravated burglary, a felony of the first degree, along with a firearm specification. The court sentenced Sickels to a minimum of five years and to a maximum term of seven and a half years for aggravated burglary, plus three years for the firearm

specification, to be served prior to and consecutively to the indeterminate sentence. For the following reasons, the judgment of the trial court is affirmed.

## I. Factual and Procedural Background

{¶ 2} Sickles' conviction arose from an incident outside Charley Prater's home in Springfield on September 9, 2021. Sickels, who was known to Prater, came to her house and claimed that some of his property was inside. Prater stepped outside the house to speak with him, telling him that none of his belongings were in the house. He became aggressive and tried unsuccessfully to enter the home. Sickels then retrieved a gun from a bookbag he had left on the sidewalk, threw Prater to the ground on the porch, threatened her, put a gun to her head, and attempted to kick in the front door. Prater eventually managed to call 911.

{¶ 3} Sickels was indicted on September 21, 2021, and he pled not guilty two days later. Trial commenced on April 6, 2022. At the conclusion of the State's case, defense counsel moved for an acquittal, and the court overruled the motion. The jury rendered its verdict on April 8, 2022. On April 20, 2022, Sickels filed a motion for acquittal. On April 21, 2022, he filed a motion for new trial. The State opposed the motions on July 12, 2022, and Sickels filed a reply.

{¶ 4} The court overruled Sickels' motions on August 3, 2022. The court noted that it had observed the demeanor of Charley Prater, the victim, "on the witness stand under both direct and cross examination and found her to be a credible witness." The court reviewed the recording of Prater's 911 call, as well as testimony and photos depicting damage to Prater's door frame from Sickels' forcible entry. The court found

that a rational finder of fact, viewing the evidence in a light most favorable to the State, could have found all the essential elements of aggravated burglary proven beyond a reasonable doubt. The court concluded that Sickels had forcibly trespassed into an occupied structure, with a deadly weapon, with the purpose to commit the criminal offenses of menacing and abduction, "which are elements of the aggravated burglary charge."

## II. Arguments and Analysis

{¶ 5} Sickels asserts three assignments of error. We will consider his first two assignments of error together. They are as follows:

> APPELLANT'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

> APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} Sickels asserts that the State failed to establish that he "trespassed *with the purpose or intent of committing a criminal act.*" (Emphasis sic.) He argues that he left the firearm "away from him, the structure, and outside of his immediate control." He argues that the State provided no evidence to contradict his claims that he went to Prater's home to gather his clothes, nor any DNA evidence or fingerprints showing that the gun belonged to him or was under his control. Sickels argues that the State "did not provide sufficient evidence that at any time during this incident [he] intended to commit a criminal act, simply that he went to the home to retrieve his own clothes and allegedly responded in a fit of passion when he did not receive them."

{¶ 7} According to Sickels, the State failed to provide sufficient evidence that he had trespassed with a deadly weapon or threatened physical harm within an occupied structure. He argues that the porch was not enclosed, and he did not enter the porch, but instead stood upon it. Sickels notes that Prater's roommate did not testify and corroborate Prater's testimony that the gun was brought inside the home.

{¶ 8} Sickels directs our attention to *State v. Holmes,* 181 Ohio App.3d 397, 2009-Ohio-1241, 909 N.E.2d 163, ¶ 25 (8th Dist.) ("in the absence of evidence that defendant did 'display the weapon, brandish it, indicate that [she possessed] it, or use it,' there is insufficient evidence to support the three-year firearm specification, and defendant must be resentenced only on the one-year firearm specification under R.C. 2941.141."). He argues that his aggravated burglary conviction was "not supported by sufficient evidence because the elements of intent, purpose, and entrance into an occupied structure with a deadly weapon or an intention to [inflict] physical harm on another have not been met * * *."

{¶ 9} The State responds that Prater's testimony and the 911 recording supported the jury's verdict. The State argues that Sickels' conduct satisfied the elements of aggravated burglary whether Prater was on the porch or in the house at various times during the incident. According to the State, the jury was able to weigh Prater's testimony and find that Sickels held her at gun point while forcing his way into her home, thereby committing menacing and/or abduction while trespassing, and supporting his conviction for aggravated burglary with a firearm specification.

{¶ 10} As this Court has noted, " '[a] sufficiency-of-the-evidence argument

challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law.' * * *." *State v. Williams*, 2d Dist. Clark No. 2021-CA-66, 2022-Ohio-2517, ¶ 44. Further,

> * * * "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*State v. Stutz*, 2020-Ohio-6959, 165 N.E.3d 821, ¶ 11 (2d Dist.).

**{¶ 11}** Regarding the manifest weight of the evidence, this Court has noted:

> Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be

reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

*State v. Hammock*, 2d Dist. Montgomery No. 24664, 2012-Ohio-419, ¶ 12.

**{¶ 12}** Finally,

[a] further important principle is that appellate courts should cautiously exercise their discretionary power of finding that judgments are against the manifest weight of the evidence. This is because factfinders see and hear the witnesses and have unique competence to decide whether, and to what extent, to credit their testimony. As a result, we give substantial deference to credibility decisions of factfinders. *State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 59 (2d Dist.), citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

*Williams* at ¶ 47.

**{¶ 13}** R.C. 2911.11(A)(2) provides:

No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

* * *

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

{¶ 14} As noted by the Supreme Court of Ohio, "for purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes*, 87 Ohio St.3d 527, 530, 721 N.E.2d 1037 (2000). We note that the court instructed the jury that the "purpose to commit Menacing and/or Abduction may be formed at any point during the course of the trespass."

{¶ 15} R.C. 2903.22 proscribes menacing and provides that no "person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person * * * or a member of the other person's immediate family." R.C. 2905.02(A)(2) proscribes abduction and provides that no "person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear."

{¶ 16} At trial, Charley Prater testified that on September 9, 2021, at around 3:45 p.m., Sickels was outside her home on Avondale Avenue in Springfield, while her eight-year-old son was sleeping inside. Prater stated that she knew Sickels as "Drew," that he was her "friend's ex," and that he had been to her home a few times. Prater testified that she secured her front door with knives and went out her back door to speak to Sickels, who claimed that some of his property was inside her home, "and he wasn't leaving

without it." Prater described Sickels as loud and aggressive. Prater stated that Sickels approached her front door and tried unsuccessfully to enter her home. Prater stated that Sickels then retrieved a gun from a bookbag on the walkway by her front steps and that he came onto the porch, threw her down, put her head on a chair, and put the gun to her head. According to Prater, Sickels stated that he wanted "his belongings" and that she needed "to pray to a higher power."

{¶ 17} After Prater told Sickels there was nothing of his in her home, she testified that he kicked in her front door. Prater testified that Sickels stood her up and took her in the doorway with him while pointing the gun at her. Upon seeing Prater's roommate, Sheldon Pack, emerge from the bathroom, Sickels approached Pack, accusing him of wearing Sickels' clothing, and demanding that Pack return the clothing. Prater testified that she told Sickels that her son was in the home, that Sickels acknowledged he was aware of the child's presence, and that was the reason he had not fired his gun. Prater stated that she talked Sickels into going back out on the porch. With the gun pointed at her, while her head was again on the chair, Prater stated that Sickels continued to talk about his property. She testified that she was able to call 911 on her cell phone. Prater told Sickels that she had contacted 911 and that the dispatcher could hear everything he was saying.

{¶ 18} State's Exhibit 16, a recording of the 911 call, was played for the jury. Prater identified photos of her home, a photo of Sickels' bookbag on the walkway to her front porch, and damage to her front door frame. Prater identified State's Exhibit 19-A as the weapon brandished by Sickels.

{¶ 19} On cross-examination, Prater admitted that she had been addicted to heroin on the date of the incident, and that she had last used drugs 10 or 12 hours before Sickels arrived. She stated that Sickels had never lived at the Avondale address and that his clothing was not in her home. She testified that after she called 911, Sickels put the gun back in his backpack. According to Prater, Sickels believed that his ex-girlfriend was inside the home with his clothing.

{¶ 20} Officer Joseph Robinson of the Springfield Police Department testified that he and another officer responded to Prater's address on the date of the incident within about four minutes of being dispatched, and he initially observed Sickels "limping away towards the bike path from the house." After Sickels was detained, Robinson approached Prater's front porch to speak to her and, in plain view, he saw a handgun in the backpack. He stated that State's Exhibit 19-A was the firearm he had collected from the bookbag. Other exhibits included photos of the handgun in the backpack, the gun outside of the backpack with the magazine removed, rounds of ammunition, two additional magazines removed from the backpack, and bottles of prescription medication bearing Sickels' name. Robinson described Sickels as emotional and "highly upset" about his clothing.

{¶ 21} Sergeant Doug Pergram of the Springfield Police Department testified that he was assigned to Staff Services and supervised the Crime Scene Unit and the Property Room. He stated that State's Exhibit 19-A was a "Glock Model 17 9-millimeter semi-auto pistol." Sergeant Pergram stated that on September 13, 2021, he test-fired the weapon with another officer and completed a report concluding that the firearm was operational.

{¶ 22} At disposition, the court concluded that Sickels "did commit the offense of menacing because [he] knowingly caused Charley Prater to believe that during the course of [his] trespass into her home, that [he] would cause her physical harm." The court found that during the trespass, Sickels committed abduction and also, by threat and by force, restrained Prater of her liberty under circumstances that created a risk of physical harm to her and placed her in fear of physical harm. The court described Sickels' actions as a "terrifying crime."

{¶ 23} We have reviewed Prater's 911 call. Prater can be heard telling the dispatcher that Sickels, whom she mentioned by name and described as her "friend's ex," had put a gun to her head, and Sickels can be heard telling Prater to ask for forgiveness in an aggressive manner. Prater told the dispatcher to "please hurry" because her son was in the home, and she feared not only for her own safety but for that of her son. The call ended when Prater told the dispatcher that responding officers had taken Sickels into custody. Prater identified the weapon Sickels' had used, which was found to be loaded and operational, in a bag with prescription medication bottles in Sickels' name.

{¶ 24} Having reviewed the entire record, and deferring to the trial court's assessment of Prater's credibility, we find that Sickels' conviction for aggravated burglary (menacing/abduction) was supported by sufficient evidence and was not against the manifest weight of the evidence. We conclude that a rational trier of fact could have found the essential elements of aggravated burglary, menacing, and abduction proven beyond a reasonable doubt. Accordingly, Sickels' first and second assignments of error are overruled.

{¶ 25} Sickels' third assignment of error is as follows:

APPELLANT'S INDEFINITE 5 TO 7.5 YEAR PRISON SENTENCE IS CONTRARY TO LAW.

{¶ 26} Sickels asserts that "the record does not support the trial court's sentence" and that his sentence is "excessive and contrary to law."

{¶ 27} The trial court's judgment entry of conviction stated that the court had considered R.C. 2929.11 and R.C. 2929.12 in imposing sentence. The court found no factors indicating that Sickels' conduct was less serious than conduct normally constituting the offense. It found that Sickels had not responded favorably to sanctions previously imposed and had shown no genuine remorse.

{¶ 28} As this Court has previously noted:

In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, the Supreme Court of Ohio "clarified an appellate court's review of a felony sentence under R.C. 2953.08(G)(2)." *State v. Litteral*, 2d Dist. Clark No. 2021-CA-10, 2022-Ohio-1187, ¶ 21. "In *Jones*, the court held that 'R.C. 2953.08(G)(2)(b) * * * does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12.' " *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 17, quoting *Jones* at ¶ 39.

"In so holding, the Supreme Court explained that 'an appellate court's determination that the record does not support a sentence does not equate

to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b).' " *Id.*, quoting *Jones* at ¶ 32. "Therefore, pursuant to *Jones*, an appellate court errs if it relies on the dicta in *Marcum* and modifies or vacates a sentence 'based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and R.C. 2929.12.' " *Id.*, quoting *Jones* at ¶ 29, and referencing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.

We also stressed in *Dorsey* that, due to "the Supreme Court's holding in *Jones*, when reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we shall no longer analyze whether those sentences are unsupported by the record. We simply must determine whether those sentences are contrary to law." *Dorsey* at ¶ 18. Consequently, " '[a] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.' " *Id.*, quoting *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.).

*State v. Gatewood*, 2d Dist. Clark No. 2021-CA-20, 2022-Ohio-2513, ¶ 17-19.

**{¶ 29}** Sickels' sentence was imposed following the court's consideration of R.C. 2929.11 and R.C. 2929.12. "Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11

and 2929.12." *Jones* at ¶ 42.   We conclude that the trial court made appropriate findings in its journal entry under R.C. 2929.11 and R.C. 2929.12.   Sickels' sentence also is not contrary to law.   R.C. 2929.14 provides a statutory range of three, four, five, six, seven, eight, nine, ten, or eleven years for a felony of the first degree, and Sickels' stated minimum term of five years was within the statutory range.   The court properly determined the maximum term of seven and a half years pursuant to R.C. 2929.144. Accordingly, Sickels' third assignment of error is overruled.

### III. Conclusion

{¶ 30} Sickels' conviction for aggravated burglary was supported by sufficient evidence and was not against the manifest weight of the evidence.   His sentence is not contrary to law.   Having overruled Sickels' assigned errors, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.