[Cite as *State v. Litteral*, 2022-Ohio-1187.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-10 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-167 |
| | : | |
| ROBERT LITTERAL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of April, 2022.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 2541 Shiloh Springs Road, Dayton, Ohio 45426
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Defendant-appellant Robert Litteral appeals his conviction for one count of forgery, in violation of R.C. 2913.31(A)(1), a felony of the fifth degree. Litteral filed a timely notice of appeal on February 10, 2021.

**{¶ 2}** At the time of the offense, Litteral was an employee at a tree trimming service along with his nephew, Joey. On January 3, 2020, employees of the tree trimming service, including Litteral and Joey, traveled to the residence of Jennifer Vanover to potentially perform some landscaping around her property. Vanover is Joey's mother and Litteral's former sister-in-law. At some point, an unidentified female in the group of employees asked Vanover if she could use the restroom inside the residence. Vanover responded affirmatively, and the female went inside the residence ostensibly to use the restroom. The tree trimming crew eventually left Vanover's property without performing any landscaping.

**{¶ 3}** Later the same day, Litteral cashed a check from Vanover's account made out to Litteral in the amount of $1,000 at a CheckSmart in Springfield, Ohio. Several weeks later, Vanover was notified of the stolen check by her son, Joey, and she filed a report with the German Township Police Department. CheckSmart, a check-cashing business, keeps photocopies of the driver's licenses of customers who cash checks at the business. Upon investigating this matter, Lieutenant Russell Garman testified that he examined CheckSmart's records, and he identified Litteral as the individual who had cashed the check in question.

**{¶ 4}** On March 24, 2020, Litteral was indicted for one count of receiving stolen property and one count of forgery. A jury trial was held on October 28, 2020. Litteral

testified on his own behalf at trial. Litteral admitted to signing the check in his name and presenting it at CheckSmart for payment. Litteral, however, testified that he did not know that he was breaking any laws by trying to cash the check.

**{¶ 5}** The jury found Litteral guilty of forgery but acquitted him of receiving stolen property. On October 30, 2020, the trial court sentenced Litteral to 12 months in prison for the forgery conviction.

**{¶ 6}** It is from this judgment that Litteral now appeals, raising three assignments of error.

THE TRIAL COURT ERRED IN DENYING THE DEFENSE MOTION FOR A MISTRIAL BASED UPON THE STATE'S WITNESS COMMITTING PERJURY.

**{¶ 7}** In his first assignment, Litteral contends that the trial court erred when it overruled his motion for a mistrial, which was based on inconsistencies in Vanover's testimony and her arguable perjury.

**{¶ 8}** In *State v. Patterson*, 188 Ohio App.3d 292, 2010-Ohio-2012, 935 N.E.2d 439 (2d Dist.), we stated:

> Mistrials need to be declared only when the ends of justice so require, and a fair trial is no longer possible. *State v. Garner* (1995), 74 Ohio St.3d 49, 59, 656 N.E.2d 623. The decision whether to grant a mistrial lies within the trial court's sound discretion. *Id.* In order to demonstrate that a trial court has abused its discretion in denying a motion for a mistrial, a criminal appellant must show that the trial court's decision was arbitrary,

unreasonable, or unconscionable. *State v. Nichols* (1993), 85 Ohio App.3d 65, 69, 619 N.E.2d 80.

> Normally, in determining whether the trial court properly exercised its discretion, reviewing courts look to whether (1) "there [was] a 'manifest necessity' or a 'high degree' of necessity for ordering a mistrial, or (2) 'the ends of public justice would otherwise be defeated.' " *State v. Widner* (1981), 68 Ohio St.2d 188, 189-190, 22 O.O.3d 430, 429 N.E.2d 1065, quoting *Arizona v. Washington* (1978), 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717. A "manifest necessity" for a mistrial does not mean that a mistrial was absolutely necessary or that there was no other alternative. *Arizona v. Washington*, 434 U.S. at 511, * * *. In order to exercise "sound discretion" in determining that a mistrial is necessary, the trial judge should allow the defense and prosecution to state their positions on the issue, consider their competing interests, and explore some reasonable alternatives before declaring a mistrial. *Id.* at 514-516 * * *.

*Id.* at ¶ 69-70.

{¶ 9} On cross-examination, the following exchange occurred between Vanover, the trial court, and the parties:

Defense Counsel: Do you remember giving a report to Officer Stuart when he first came out on February 22[, 2020]?

Vanover: Yes.

Q: Do you recall not telling him the name of any of the people who came

out to your house?

A: No.

Q: So if this report says that it was two guys and one girl, do you recall telling Officer Stuart that?

A: It could have been.

Q: When did you realize the check was missing?

A: *I was told that it was gone.*

Q: *Who told you it was gone?*

A: *Just somebody.   I'm not going to say.*

Q: *Was it Joey?*

The Court: I'm sorry.   Did you say, "I'm not going to say?"

Vanover: Yes.

The Court: You need to answer the question.

Vanover: Well, I'm not going to say who.

The Court: You need to answer the question.

Vanover: Okay.   Well, it was a friend.

The Court: You need to name a name.

Vanover: I don't know their name.

Defense Counsel: So a friend of yours that you don't know the name [sic]?

Vanover: It wasn't a friend of mine.

Q: Who was it a friend of?

A: I don't know.

Trial Tr. 82-83.

{¶ 10} After defense counsel finished cross-examining Vanover, the State examined her on re-direct, and Litteral examined her on re-cross-examination. When the parties were finished questioning Vanover, the trial court excused the jury for a lunch recess and explained to Vanover that she was required by law to divulge the name of the person who told her the check had been taken. The trial court informed Vanover that she was under oath and that she did not get to unilaterally decide what information she wanted to divulge to the jury. The trial court then informed Vanover that Litteral's liberty was at stake and that it was of paramount importance that she tell the truth to the jury. Vanover then informed the trial court and the parties that it was her son, Joey, who had told her that one of her checks had been stolen.

{¶ 11} When the trial court and the parties reconvened after lunch, Litteral requested a mistrial, alleging that Vanover had perjured herself before the jury. The State requested that it be able to call Vanover back on a second re-direct and question her regarding the true identity of the individual who had told her that one of her checks had been stolen. The trial court denied Litteral's motion for mistrial, brought the jury into the courtroom, and recalled Vanover to the stand for further questioning by both parties.[1] The following exchange occurred:

The State: Now, you had been asked a question prior to lunch and you said

that you didn't know the answer in regards to who told you that defendant

---

[1] Immediately prior to Vanover's being recalled to the stand, the trial court informed her that if she was concerned that her testimony would incriminate her in any way, she had a constitutional right to invoke her right against self-incrimination, and she could consult an attorney.

had stolen your check. You didn't answer it before, but I am asking you to answer it now. Who told you that the defendant had your stolen check?

Vanover: My son, Joey Litteral.

Q: Your son, Joey Litteral. Is that right?

A: Yes.

Q: Had you told investigators that?

A: No.

Q: Had you told me [the prosecutor] that?

A: No.

Q: And you certainly didn't tell the jury that when we were here earlier today?

A: No.

Q: *Why did you not want to give that information up?*

A: *I did not want any issues with Robert* [*Litteral*] *and my son.*

Q: *Tell me what you mean by that.*

A: *I just didn't – I mean,* [*Joey's*] *dad passed away so Robert's the only relative in town that's close to Joey, and I just didn't want any problems between them so.*

Q: *You wanted to keep your son's name out of it?*

A: *Yes.*

* * *

Q: And I would ask you this again. Did you owe Robert Litteral any money?

A: No.

Q: And did you ever write him a check?

A: No.

Q: Did you know about this before your son told you about this?

A: No.

Q: And I'll ask you this, is this some big conspiracy to get $1,000 from CheckSmart that you are in on?

A: No.

* * *

Defense Counsel: * * * When you were questioned by [the State] earlier today right before the lunch break, you had said that you didn't know the person that told you this information, right?

A: Right.

Q: *So that was a lie, right?*

A: *Yes.*

Q: And then you said you didn't want to tell who that person was?

A: Right.

Q: Even though you knew who the person was, is that right?

A: Right.

Q: So that was also a lie?

A: I don't know that that was a lie; I just didn't want to tell so that would be the truth.

Q: But the fact that you didn't want to tell and then you followed that up by saying you didn't really know who the person was, that part was a lie.

A: That part was a lie.

(Emphasis added.)   Trial Tr. 108-112.

{¶ 12} It is apparent from this transcript excerpt that any issues with Vanover's credibility were made known to the jury, and her testimony regarding who had informed her that one of her checks had been stolen was ultimately given in front of the jury. Furthermore, defense counsel did thoroughly re-cross-examine Vanover, wherein he was able to elicit that she had lied in her initial testimony.   Notably, defense counsel did not object to Vanover's recall.

{¶ 13} Litteral also argues that the trial court should have declared Vanover a hostile witness or a court's witness based upon her failure to be honest in her initial testimony.   A "hostile witness" is one who surprises the calling party at trial by turning against that party while testifying.   *State v. Darkenwald*, 8th Dist. Cuyahoga No. 83440, 2004-Ohio-2693, ¶ 15.   A "hostile witness" is addressed under Evid.R. 607, which states that the "credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."   For purposes of the rule, a party demonstrates surprise when a witness's trial testimony is "materially inconsistent" with a prior statement and counsel did not have reason to believe that the witness would repudiate the prior statement. *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, 847 N.E.2d 1237 (2d Dist.); *State v. Eicholtz*, 2d Dist. Clark No.

2012-CA-7, 2013-Ohio-302, ¶ 38. "Affirmative damage" exists when a witness's trial testimony contradicts, denies, or harms the case of the party who called that witness; it does not exist when a witness denies knowledge or fails to remember. *Eicholtz* at ¶ 38, citing *Dayton v. Combs*, 94 Ohio App.3d 291, 299, 640 N.E.2d 863 (2d Dist.1993); *State v. Risden*, 2d Dist. Montgomery No. 22930, 2010-Ohio-991, ¶ 74. The decision as to whether a witness is a "hostile" witness, which includes whether the elements of surprise and affirmative damage have been established, is entrusted to the broad, sound discretion of the trial court. *State v. Diehl*, 67 Ohio St.2d 389, 391, 423 N.E.2d 1112 (1981).

{¶ 14} Evid.R. 614 authorizes the court to call a witness whom a party might otherwise call, on the party's "suggestion" that the witness would then recant another, prior statement favorable to that party. *State v. Kiser*, 6th Dist. Sandusky No. S-03-028, 2005-Ohio-2491. The practice of calling a witness as a court's witness for that reason "is justified by the tendency of juries to associate a witness with the party calling him, regardless of the technical aspects of vouching." Annotation, 53 A.L.R.Fed. 498, 500, Calling and Interrogation of Witnesses by Court under Rule 614 of the Federal Rules of Evidence.

{¶ 15} "A trial court possesses the authority in the exercise of sound discretion to call individuals as witnesses of the court." *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980), paragraph four of the syllabus. "It is well-established that a trial court does not abuse its discretion in calling a witness as a court's witness when the witness's testimony would be beneficial to ascertaining the truth of the matter and there is some

indication that the witness's trial testimony will contradict a prior statement made to police." *State v. Arnold*, 189 Ohio App.3d 507, 2010-Ohio-5379, 939 N.E.2d 218, ¶ 44 (2d Dist.), citing *State v. Lather*, 171 Ohio App.3d 708, 2007-Ohio-2399, 872 N.E.2d 991, ¶ 3 (6th Dist.).

{¶ 16} Here, after being admonished by the trial court, Vanover ultimately changed her testimony and affirmatively stated that her son, Joey, was the individual who told her about the stolen check. During a recess, the trial court spoke candidly with Vanover regarding the inconsistencies in her testimony, and she stated that upon being questioned by the parties again, she would testify truthfully. Although this conduct by the trial judge was arguably questionable, neither the State nor defense counsel objected. Both the State and defense counsel were ultimately able to question Vanover regarding the inconsistencies in her testimony before the jury. Vanover acknowledged that she had initially lied, and then she changed her testimony. Furthermore, defense counsel did not object to the trial court's failure to declare Vanover a hostile witness or a court's witness during the jury trial. Thus, we conclude that the trial court did not err when it failed to declare Vanover a hostile witness or a court's witness.

{¶ 17} Litteral's first assignment of error is overruled.

{¶ 18} Litteral's second assignment of error is as follows:

MR. LITTERAL'S MAXIMUM SENTENCE WAS UNCONSTITUTIONAL
AND UNLAWFUL BASED UPON HIS CONVICTION OF A FELONY OF
THE FIFTH DEGREE.

{¶ 19} In his second assignment, Litteral essentially argues that his 12-month

maximum sentence for forgery, a felony of the fifth degree, was contrary to law.

{¶ 20} When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain statutes; or (2) the sentence is otherwise contrary to law. *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 21} To the extent that Litteral seeks to have this Court modify his sentence, we emphasize that the Supreme Court of Ohio has clarified an appellate court's review of a felony sentence under R.C. 2953.08(G)(2). *State v. Jones*, 163 Ohio.St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 39. The Supreme Court determined that R.C. 2953.08(G)(2)(a) "clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and R.C. 2929.12 because * * * R.C. 2929.11 and R.C. 2929.12 are not among the statutes listed in the provision." *Id.* at ¶ 31. Thus, the Supreme Court concluded that an appellate court may not modify or vacate a felony sentence based upon a finding by clear and convincing evidence that the record does not support the trial court's "findings" under R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 42 ("Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.").

**{¶ 22}** In *Jones*, the Supreme Court also confirmed that R.C. 2953.08(G)(2)(b) does not provide a mechanism for an appellate court to modify or vacate a felony sentence based upon a finding that the sentence is "contrary to law" because it clearly and convincingly is not supported by the record under R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 32-39. "As a result of the Supreme Court's holding in *Jones*, when reviewing felony sentences that are imposed solely after considering the factors in R.C. 2929.11 and R.C. 2929.12, we shall no longer analyze whether those sentences are unsupported by the record. We simply must determine whether those sentences are contrary to law." *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18. "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." *Id.*, citing *State v. Brown*, 2017-Ohio 8416, 99 N.E.3d 1135 (2d Dist.).

**{¶ 23}** Litteral argues that R.C. 2929.13(B)(1)(a)(i) states that the trial court shall sentence an offender convicted of a felony of the fourth or fifth degree to community control sanctions if they have no prior felony convictions. Litteral, however, acknowledges that he has a prior felony record for possession of drugs in 2014. Moreover, although the maximum sentence, the 12-month sentence imposed by the trial court for Litteral's forgery conviction was within the statutory range for that offense. Additionally, the trial court stated the following in its judgment entry of conviction:

> The Court considered the record, oral statements of counsel, the
> defendant's statement, and the principles and purposes of sentencing under

Ohio Revised Code Section 2929.11, and then balanced the seriousness and recidivism factors under Ohio Revised Code Section 2929.12. The Court also considered the defendant's criminal history.

The Court found that it has the discretion, pursuant to Ohio Revised Code Section 2929.13(B)(1)(b)(ix), to impose a prison sentence upon the defendant because he has previously served two prison terms.

**{¶ 24}** In light of the foregoing, Litteral cannot demonstrate that his sentence was clearly and convincingly contrary to law, and his sentence must therefore be affirmed. *See State v. Burks*, 2d Dist. Clark No. 2019-CA70, 2021-Ohio-224, ¶ 9. Under *Jones*, this ends the inquiry regarding Litteral's sentence.

**{¶ 25}** Litteral's second assignment of error is overruled.

**{¶ 26}** Litteral's third and final assignment of error is as follows:

THE JURY RENDERED INCONSISTENT VERDICTS, DEMONSTRATING THERE WAS INSUFFICIENT EVIDENCE TO CONVICT MR. LITTERAL.

**{¶ 27}** In his third assignment, Litteral contends that since he was acquitted of receiving stolen property, the jury "did not believe the check was stolen." Therefore, Litteral argues that there was insufficient evidence to convict him of the "theft required for forgery." Appellant's Brief p. 11.

**{¶ 28}** Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such

evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 52. The relevant inquiry is " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial." *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33. When evaluating the sufficiency of the evidence, this court defers to the trier of fact regarding questions of credibility. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.

**{¶ 29}** The forgery statute, R.C. 2913.31(A)(1), states in pertinent part:

(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:

(1) Forge any writing of another without the other person's authority[.]

**{¶ 30}** Initially, we note that there is no theft element in the offense of forgery pursuant to R.C. 2913.31(A)(1). Simply put, there is no requirement under the statute that a theft offense occur in order to have a conviction for forgery.

**{¶ 31}** Furthermore, the Ohio Supreme Court has stated that a verdict will not be held as inconsistent and set aside because there are two different conclusions on two separate counts, even when there is no material difference between the two counts. *State v. Howard,* 2d Dist. Clark No. 2009-CA-2, 2010-Ohio-501, ¶ 32, citing *Browning v. State*

120 Ohio St. 62, 71-72, 165 N.E. 566 (1929).

{¶ 32} In *Howard*, we stated as follows:

* * * [I]nconsistency in a verdict cannot arise from inconsistent responses to different counts. *State v. Brown* (1984), 12 Ohio St.3d 147, 12 OBR 186, 465 N.E.2d 889, syllabus; *State v. Hayes*, 166 Ohio App.3d 791, 2006-Ohio-2359, 853 N.E.2d 368, at ¶ 35. Instead, an inconsistency only arises when a jury gives inconsistent responses to the same count. *State v. Washington* (1998), 126 Ohio App.3d 264, 276, 710 N.E.2d 307. The Ohio Supreme Court has explained that 'each count in an indictment charges a distinct offense and is independent of all other counts. Following that reasoning, the court found that a jury's decision as to one count is independent of and unaffected by the jury's finding on another [ ]count.' *Id*. See, also, *Browning v. State* (1929), 120 Ohio St. 62, 165 N.E.2d 566, paragraph three of the syllabus.

*Id.*

{¶ 33} Litteral admitted that he wrote his name on Vanover's check, made it out in the amount of $1,000 "for tree trimming," and then cashed it. State's Ex. 4. Vanover testified that she did not give Litteral permission to write his name on the check or cash the check. Furthermore, Vanover testified that Litteral never performed any landscaping or tree trimming services for her. Accordingly, even if the jury's verdicts were arguably inconsistent, the evidence adduced at trial was sufficient to convict Litteral of forgery, in violation of R.C. 2913.31(A)(1), a felony of the fifth degree.

{¶ 34} Litteral's third assignment of error is overruled.

{¶ 35} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.

Copies sent to:

Ian A. Richardson
Nicole Rutter-Hirth
Hon. Douglas M. Rastatter