[Cite as *State v. Johnson*, 2025-Ohio-713.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

MYRON WITHERS JOHNSON,

    DEFENDANT-APPELLANT.

CASE NO. 9-24-04

O P I N I O N

---

**Appeal from Marion County Common Pleas Court**
**General Division**
**Trial Court No. 22-CR-449**

**Judgment Affirmed**

**Date of Decision: March 3, 2025**

---

**APPEARANCES:**

    *April F. Campbell* **for Appellant**

    *Allison M. Kesler* **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Myron W. Johnson ("Johnson"), appeals the January 8, 2024 judgment entry of sentencing of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

*Background*

{¶2} This case arises from an August 5, 2022 incident in which a vehicle driven by Johnson was pulled over by a Marion County Sheriff's deputy for an illegal window tint and driving with a suspended license. During the course of the stop, three baggies containing drugs were found in the pants of Johnson's passenger, Kaitlyn Morales ("Morales").

{¶3} On August 17, 2022, the Marion County Grand Jury indicted Johnson on two counts: Count One of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e), a first-degree felony; and Count Two of tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony. Count One contained a forfeiture specification for $884 in U.S. currency. Johnson entered not guilty pleas at his initial appearance on August 22, 2022.

{¶4} A jury trial was held on December 12, 2023. At trial, Detective Matthew Creps ("Detective Creps"), a member of MARMET, a combined task force that investigates and handles drug-related crimes in Marion County, testified that as part of a drug investigation, he and other members of the task force conducted

electronic GPS surveillance on Johnson's vehicle. (Dec. 12, 2023 Tr. at 103, 114). MARMET officers observed Johnson's vehicle travel from Marion County to Detroit, Michigan. (*Id.* at 103-104). According to Detective Creps, the vehicle arrived in Detroit around 1:40 a.m. on August 5, 2022 and left Detroit around 6:00 a.m. that same day. (*Id.* at 115-116). While in Detroit, the vehicle stopped at several locations. (*Id.* at 111). Detective Matt Baldridge ("Detective Baldridge"), another member of the MARMET drug task force, testified that Detroit is a "source city" for drugs in Marion County. (*Id.* at 128-129). Accordingly, someone leaving Marion County and traveling "right back," in the middle of the night is "absolutely" suspicious to Detective Baldridge. (*Id.* at 129). As the vehicle returned from Detroit, Detective Creps and Detective Baldridge directed that a traffic stop be made on the vehicle. (*Id.* at 120).

{¶5} Deputy David Barron ("Deputy Barron"), a deputy with the Marion County Sheriff's Office, testified that on August 5, 2022, he conducted a traffic stop of a Lexus SUV registered to Johnson on Irvin Shoots Road near the intersection with Prospect-Upper Sandusky Road. (Dec. 12, 2023 Tr. at 134-135). Deputy Barron stated that he pulled the vehicle over after observing that the vehicle's window tint appeared to be darker than the legal threshold. (*Id.*). Additionally, Deputy Barron learned that Johnson, the registered owner of the vehicle, did not have a valid driver's license. (*Id.* at 135).

{**¶6**} Deputy Barron's body-worn camera footage of the August 5, 2022 traffic stop, State's Exhibit 1, was played in court. (Dec. 12, 2023 Tr. at 138-139). State's Exhibit 1 depicts Deputy Barron approach the dark-colored Lexus and speak to Johnson, who is in the driver's seat and Morales, who is seated in the front passenger seat. (State's Ex. 1). In response to Deputy Barron's inquiry about where they are coming from, Johnson first states that he is coming from his friend's house and then corrects himself by saying "actually I was trying to buy a motor scooter down near this smaller town to see if it was still available." (*Id.*). State's Exhibit 1 depicts Johnson denying multiple times that he was in Detroit or leaving the State of Ohio. (*Id.*). Johnson was placed under arrest pursuant to an outstanding warrant. (*Id.*). Despite his statement that he only had "a couple dollars" on him, officers located over $800 on his person. (*Id.*). Johnson denied having drugs on his person or in the car. (*Id.*).

{**¶7**} At trial, Morales testified that on August 5, 2022 she traveled to Detroit with Johnson and, on the way home, they were stopped by a Marion County Sheriff's Deputy. (Dec. 12, 2023 Tr. at 88-89). According to Morales, she and Johnson traveled to Detroit to "see family" and "to possibly buy a motorcycle" and that when Johnson went to his family's house she sat in the car for several hours. (*Id.* at 96, 100).

{**¶8**} Morales stated that as Johnson was arrested, she admitted that there was crack cocaine and fentanyl on her person, stuffed in her pants. (*Id.* at 89-90). When

asked how she came to have the crack cocaine, fentanyl, and crack pipe on her person she replied "I grabbed it [and] put it in my pants" "[t]o save my own ass[.]" (*Id.* at 90, 96). Morales explained that it was a "natural reaction" and that she was "just trying to hide it." (*Id.* at 90). Morales denied that the drugs were hers and stated that she had "no clue" who the drugs belonged to. (*Id.*). She testified that the drugs had been located in the vehicle's console and that she had no knowledge of how they came to be there. (*Id.*). Morales denied that Johnson directed her to take the drugs from the console and hide them on her person. (*Id.* at 90-91).

{¶9} Detective Creps testified that during the traffic stop, he had a conversation with Johnson in which Johnson denied traveling to Detroit. (Dec. 12, 2023 Tr. at 105). Detective Creps recounted that Johnson told him that he was traveling to look at a scooter in another town. (*Id.*). Detective Creps testified that Johnson told him that the $884 found on his person was going to be used to purchase the scooter. (*Id.* at 105, 111). Further, Johnson denied to Detective Creps that he had any knowledge of the drugs found on Morales. (*Id.* at 105). However, according to Detective Baldridge, although Johnson did not directly admit that the drugs were his, he made a statement similar to "don't charge the girl" or "you can't put that on the girl." (*Id.* at 128).

{¶10} At the conclusion of the trial, the jury found Johnson guilty of Count One (possession of cocaine) and not guilty of Count Two (tampering with evidence). The trial court accepted the jury's verdicts and continued the matter for sentencing.

{¶11} On January 4, 2024, the trial court sentenced Johnson to an indefinite sentence of a minimum of 11 years to a maximum of 16.5 years in prison. The trial court ordered the sentence to run consecutively to an additional sentence imposed on Johnson by the Marion County Common Pleas Court in another case. Johnson was also ordered to pay a $10,000 mandatory drug fine. The $884 referenced in the forfeiture specification associated with Count One was ordered to be forfeited and applied to the fine.

{¶12} Johnson filed a timely notice of appeal, and he raises two assignments of error for our review.

### First Assignment of Error

**Because the State failed to establish Johnson's knowledge and possession, as well as venue beyond a reasonable doubt, Johnson's conviction should be reversed. The evidence also manifestly weighed against convicting Johnson.**

{¶13} In his first assignment of error, Johnson argues that his conviction is not supported by sufficient evidence. He also contends that his conviction is against the manifest weight of the evidence.

*Standards of Review*

{¶14} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we address the sufficiency of the evidence and manifest weight legal concepts individually.

**{¶15}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

**{¶16}** On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*,

10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

### *Johnson's Offense*

**{¶17}** We first review the sufficiency of the evidence supporting Johnson's conviction. Johnson was convicted of possession of cocaine in violation of R.C. 2925.11(A), which provides, "[n]o person shall knowingly obtain, posses, or use a controlled substance or a controlled substance analog." "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

### *Analysis: Sufficiency of Evidence*

**{¶18}** On appeal, Johnson argues that the State's evidence was deficient in two regards: First, he argues that the State failed to establish venue. Second, Johnson argues that there is insufficient evidence that he had knowledge of the drugs located on Morales's person.

**{¶19}** We first address Johnson's argument that the State did not provide sufficient evidence to establish venue. "Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions

unless it is waived by the defendant." *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). "In the prosecution of a criminal case, it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *State v. Dickerson*, 77 Ohio St. 34 (1907), syllabus. *See also State v. May*, 2015-Ohio-4275, ¶ 22 (8th Dist.).

{¶20} Johnson argues that the State failed to provide sufficient evidence that the traffic stop at issue occurred in Marion County, Ohio. Specifically, Johnson argues that "[t]he State did not ask any officer . . . if the street that Johnson was pulled over on was in Marion County, Ohio." (Appellant's Brief at 6). However, a review of the record directly rebuts Johnson's claim.

{¶21} Detective Creps, a law enforcement officer with the City of Marion, who was on the scene of the traffic stop, testified as follows:

[State]:       Were you working with MARMET on August 5, 2022?

[Det. Creps]: Yes, sir.

[State]:       And were you involved with a traffic stop on a vehicle on Irvin Shoots Road, here in Marion County, Ohio?

[Det. Creps]:  Yes, sir, I was.

(Dec. 12, 2023 Tr. at 101, 103). Detective Creps then detailed his involvement in the instant case, including conducting electronic surveillance on Johnson's vehicle as Johnson traveled to Detroit and back. (*Id.* at 103-104). Additionally, Detective

Creps and Detective Baldridge, two law enforcement officers with the City of Marion Police Department testified that the case was the result of their work with MARMET, a "combined task force that investigates and handles drugs cases in Marion County." (*Id.* at 102). Furthermore, Deputy Barron, a deputy with the Marion County Sheriff's Office, who testified that his duties are to respond to calls for services "within Marion County," effectuated the traffic stop. (*Id.* at 133-134).

{¶22} Accordingly, we find that the evidence adduced at trial, when viewed in a light most favorable to the State, was sufficient to establish venue.

{¶23} We next address Johnson's argument that the State failed to establish Johnson's knowing possession of the drugs found on Morales. He challenges the State's evidence that he knowingly possessed the drugs in light of the evidence that the only illicit drugs located in the vehicle were located in Morales's pants. Johnson contends, as detailed in his second assignment of error, that the testimony he gave Morales the drugs and told her to hide them was inadmissible and, therefore, the State was not able to establish that he had knowledge of the drugs.

{¶24} "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 2012-Ohio-5235, ¶ 45 (3d Dist.), quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998). The Ohio Revised Code defines "knowingly" as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

**{¶25}** "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). "A person has 'actual possession' of an item if the item is within his immediate physical possession." *State v. Williams*, 2004-Ohio-1130, ¶ 23 (4th Dist.). "A person has 'constructive possession' if he is able to exercise dominion or control over an item, even if the individual does not have immediate physical possession of it." *Bustamante* at ¶ 25. "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982). "'Joint possession . . . exists when two or more persons together have the ability to control an object, exclusive of others.'" *State v. Hudson*, 2018-Ohio-133, ¶ 57 (8th Dist.), quoting *State v. Smith*, 2001 WL 563077, *3 (8th Dist. May 24, 2001).

**{¶26}** "[T]he State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Bustamante* at ¶ 25. "Absent a defendant's admission, the surrounding facts and

circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *State v. Voll*, 2012-Ohio-3900, ¶ 19 (3d Dist.). "Inherent in a finding of constructive possession is that the defendant was conscious of the item and therefore had knowledge of it." *State v. Alexander*, 2009-Ohio-597, ¶ 24, citing *Hankerson* at syllabus and *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976).

**{¶27}** The crux of Johnson's argument that he did not knowingly possess the drugs located on Morales's person is his assertion that Detective Baldridge's testimony that Morales told him that "when [Johnson and Morales] where about to get stopped, that [Johnson] had handed her the drugs and told her to stuff them down her pants" was inadmissible hearsay evidence. (Dec. 12, 2023 Tr. at 124).

**{¶28}** First, we note that the testimony that Johnson references relates directly to the tampering-with-evidence charge, of which Johnson was acquitted, though a statement that Johnson directed Morales to hide the drugs is, indeed, evidence that Johnson exercised dominion and control over the drugs. However, the State argues that the inconsistent statement was introduced to impeach Morales after she denied that Johnson told her to hide the drugs and was not offered for the truth of the statement. Furthermore, even if we assume (without deciding) that the testimony that Johnson directed Morales to conceal the drugs is inadmissible and exclude the statement from consideration, the evidence presented at trial was

sufficient for the jury to find that Johnson had knowledge of the drugs found on Morales.

{¶29} Morales testified that the drugs had been located in the vehicle's console and that she did not know where the drugs had come from or whom the drugs belonged to but that she concealed the drugs in her pants when the vehicle was pulled over to "save [her] own ass." (Dec. 12, 2023 Tr. at 90). Morales further admitted that she and Johnson drove in Johnson's vehicle to Detroit, which as multiple law enforcement officers attested, is a source city for Marion County. Furthermore, the trip to and from Detroit occurred in the middle of the night, which Detective Baldridge testified was "suspicious." (*Id.* at 129). Importantly, in State's Exhibit 1, Johnson repeatedly denied traveling to Detroit. (State's Ex. 1). Additionally, Detective Baldridge testified that although Johnson did not directly admit the drugs belonged to him, he inferred as much when he made the statement "you can't put that on the girl." (*Id.* at 128).

{¶30} "A jury can make reasonable inferences from the evidence." *State v. Knight*, 2016-Ohio-8134, ¶ 26 (10th Dist.). "'It is permissible for a jury to draw inferences from the facts presented to them.'" *Id.*, quoting *State v. Sanders*, 1998 WL 78787, *3 (6th Dist. Feb. 13, 1998), citing *State v. Palmer*, 80 Ohio St.3d 543, 561 (1997). There are numerous inferences that can be made from the State's evidence. For example, Morales's statement that the drugs were located in the console supports an inference that Johnson, who was the driver, only other occupant,

and owner of the vehicle had actual knowledge of the drugs and had constructive control over the drugs. Likewise, Johnson's trip to Detroit and the $884 found on his person, both of which he lied about to law enforcement, leads to an inference that Johnson was aware of the presence of the drugs and had dominion and control over them, even if law enforcement found them on Morales's person. *See State v. Frye*, 2018-Ohio-894, ¶ 53 (3d Dist.), quoting *State v. Grundy*, 1998 WL 852844, *10 (9th Dist. Dec. 9, 1998) ("'It is also irrelevant that he did not admit that the cocaine was his. Sufficient evidence existed that Defendant has exercised dominion and control over the cocaine, and was in constructive possession of the substance.'").

**{¶31}** Thus, when examining the evidence in a light most favorable to the State, we find that a rational trier of fact could have found that Johnson had knowledge of and possession of the drugs found on Morales's person. *See State v. Williamson*, 2017-Ohio-7098, ¶ 15, 58 (2d Dist.) (sufficient evidence supported the conclusion that the defendant knowingly possessed drugs where officers discovered a bag of heroin capsules on the passenger seat of the vehicle and a baggie of cocaine "in the middle console of the car, in the ashtray, just below the radio [both of which] would have been easily accessible to the driver.").

*Analysis: Manifest Weight of the Evidence*

**{¶32}** Having found that sufficient evidence supports his possession-of-cocaine conviction, we turn to Johnson's argument that his conviction is against the

manifest weight of the evidence. However, in making this manifest-weight argument, Johnson largely duplicates claims made when challenging the sufficiency of the evidence, and summarily argues that "[w]ithout Morales testifying that Johnson had knowledge and possession of the drugs, the greater amount of evidence supported the conclusion that Morales, not Johnson, did." (Appellant's Brief at 7).

{¶33} However, as detailed in our discussion of Johnson's argument regarding the sufficiency of the evidence, Detective Baldridge's testimony that Morales told him that Johnson directed her to conceal the drugs down her pants as the vehicle was being pulled over, is not necessary for the jury to have found Johnson guilty of possession of cocaine. Moreover, Johnson's acquittal of tampering with evidence suggests that the jury may not have relied on the referenced statement with respect to the possession-of-cocaine offense. Furthermore, having conducted a review of the record and the evidence in accordance with the standard set forth above, we do not find the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial.

{¶34} Johnson's first assignment of error is overruled.

**Second Assignment of Error**

**The trial court reversibly erred in permitting the detective to testify regarding Morales's prior inconsistent statement that Johnson handed her the drugs and told her to stuff them. These statements were inadmissible hearsay, were not permitted by**

**Evid.R. 613 and could not be used for the truth of the matter asserted. Thus, Johnson's conviction should be reversed.**

{¶35} In his second assignment of error, Johnson argues that the trial court erred by permitting Detective Baldridge to testify regarding Morales's prior inconsistent statement that Johnson handed her the drugs and instructed her to conceal them on her person. Johnson argues the trial court erred by allowing this testimony without complying with Evid.R. 607(A).

*Standard of Review*

{¶36} "We review a trial court's evidentiary rulings for an abuse of discretion, provided an objection is made at trial." *State v. Beasley*, 2019-Ohio-1901, ¶ 28. An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980). "We will not disturb a trial court's evidentiary rulings unless we find 'an abuse of discretion that has created material prejudice.'" *State v. Johnson*, 2015-Ohio-4903, ¶ 53, quoting *State v. Noling*, 2002-Ohio-7044, ¶ 43.

*Relevant Law and Analysis*

{¶37} Evid.R. 607(A) provides: "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." "[W]hether the elements of surprise

and affirmative damage have been established . . . is entrusted to the broad, sound discretion of the trial court." *State v. Litteral*, 2022-Ohio-1187, ¶ 13 (2d Dist.), citing *State v. Diehl*, 67 Ohio St.2d 389, 391 (1981).

Evid.R. 613(B) states:

Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

{¶38} At trial, Morales testified that on August 5, 2022 she spoke with law enforcement about what substances may be in the vehicle, as follows:

[State]:      What did [officers on the scene] ask you about?

[Morales]:   They asked what was in the car.

[State]:      And was there anything in the car?

[Morales]:   On me, yes.

[State]:      What was on you?

-17-

[Morales]:     I know it was crack cocaine and fentanyl.

[State]:       Do you know how much?

[Morales]:      No.

[State]:       How did you come to get that crack cocaine and fentanyl?

[Morales]:     I grabbed it, put it in my pants.

[State]:       Why did you do that?

[Morales]:     To save my own ass, I guess.

[State]:       How were you saving your own ass?

[Morales]:     I wasn't.

[State]:       [H]ow was putting drugs on our person . . . saving your ass?  Where were the drugs at in the car?

[Morales]:     I mean, I was just trying to hide it.  Just like any natural reaction would be.  Right?

[State]:       Were they your drugs?

[Morales]:     No.

[State]:       Whose drugs were they?

[Morales]:     I have no clue.

[State]:       Where were they at in the car?

[Morales]:     In the console.

[State]:       Do you know when they got there?

[Morales]:     Nope.  I have no clue.  I have no knowledge of them.  I just knew I had to hide them because . . .

[State]:     [Did] Mr. Johnson tell you to hide them?

[Morales]:     No.

[State]:     Now, for your testimony today, we agreed to not charge you with the crimes that Mr. Johnson is [facing] here, correct?

[Morales]:     Yeah.

[State]:     If you would tell what you told the Officers that day?

[Morales]:     Yeah.

[State]:     Is that what you told the Officers that day, that you were . . .

[Morales]:     I don't actually remember what I told the Officers that day, honestly.  I was six months pregnant.  Scared.

. . .

[State]:     So you don't remember what you told the Officers?

[Morales]:     I actually don't.  I really don't.

(Dec. 12, 2023 Tr. at 89-91).

**{¶39}** Later, Detective Baldridge testified that on August 5, 2022, he had a conversation with Morales regarding the drugs she was hiding.  When the State asked Detective Baldridge what Morales told him about drugs, Johnson's defense counsel objected on the grounds of hearsay.  (*Id.* at 120).  In response, the State replied that it was not offering the statements for the truth of the matter asserted, but

to impeach Morales's testimony. (*Id.*). The State explained that Morales's testimony that Johnson did not direct her to conceal the drugs as his vehicle was being stopped was a surprise to the State and damaged the State's case. (*Id.* at 120-124). The court allowed the following testimony pursuant to Crim.R. 613(B), as extrinsic evidence of a prior inconsistent statement:

| [State]: | What did [Morales] tell you about the drugs? |
| --- | --- |
| [Det. Baldridge]: | She told me she had drugs on her. |
| [State]: | Did she say how they got there? |
| [Det. Baldridge]: | She did. |
| [State]: | How did she say they got there? |
| [Det. Baldridge]: | She told me that when they were about to get stopped, that Myron [Johnson] had handed her the drugs and told her to stuff them down her pants. |

(Dec. 12, 2023 Tr. at 124).

{¶40} After reviewing the record, we do not find that the trial court committed reversible error. First, we note that the content of the statement, that Johnson instructed Morales to conceal the drugs, more directly related to the tampering-with-evidence charge, of which Johnson was acquitted. Furthermore, in light of the overwhelming evidence in the record, which is detailed in our analysis of Johnson's first assignment of error, we find that regardless of Detective Baldridge's testimony, the jury could have found Johnson guilty of possession of

-20-

cocaine.  Thus, we discern no material prejudice to Johnson from the inconsistent statement.  *See State v. Ortiz-Vega*, 2019-Ohio-2918, ¶ 63 (8th Dist.).

{¶41} Johnson's second assignment of error is overruled.

*Conclusion*

{¶42} For the foregoing reasons, Johnson's assignments of error are overruled.  Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

***Judgment Affirmed***


**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

**/jlm**