[Cite as *State v. Rutledge*, 2025-Ohio-3025.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

KEON L. RUTLEDGE,

    DEFENDANT-APPELLANT.

CASE NO. 5-24-43

OPINION AND
JUDGMENT ENTRY

Appeal from Hancock County Common Pleas Court
Trial Court No. 2023 CR 476

Judgment Affirmed

Date of Decision: August 25, 2025

APPEARANCES:

    *W. Alex Smith* for Appellant

    *Steven M. Powell* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Keon L. Rutledge ("Rutledge"), brings this appeal from the October 31, 2024, judgment of the Hancock County Common Pleas Court sentencing him to prison after a jury found him guilty of Aggravated Possession of Drugs. On appeal, Rutledge argues that there was insufficient evidence presented to convict him and that his conviction was against the manifest weight of the evidence. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On October 31, 2023, Rutledge was indicted for Aggravated Possession of Drugs, specifically methamphetamines, in violation of R.C. 2925.11(A), a second degree felony because the amount equaled or exceeded five times the bulk amount but was less than fifty times the bulk amount. It was alleged that a search of Rutledge's vehicle during a traffic stop uncovered 54 grams of methamphetamines in Rutledge's trunk. Rutledge pled not guilty to the charge.

{¶3} On July 22-23, 2024, Rutledge proceeded to a jury trial, wherein he was convicted of the charge as indicted. On October 28, 2024, Rutledge was sentenced to serve a prison term with a "mandatory definite minimum term of five (5) years and a maximum indefinite term of seven and one-half (7 1/2) years." A judgment entry memorializing his sentence was filed October 31, 2024. It is from this

judgment that Rutledge appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**The jury's verdict was against the manifest weight of the evidence.**

**Second Assignment of Error**

**The trial court erred in allowing the State to proceed under a theory of constructive possession where the State failed to present sufficient evidence that Appellant knowingly exercised control over the drugs.**

{¶4} As Rutledge argues his assignments of error together in his brief, we will address them together as well.

*First and Second Assignments of Error*

{¶5} In his assignments of error, Rutledge argues that there was insufficient evidence presented to convict him of Aggravated Possession of Drugs and that his conviction was against the weight of the evidence. Specifically, he contends that the evidence did not support a finding that he was in constructive possession of the methamphetamines found in his trunk, particularly given that he was a passenger in his vehicle at the time of the traffic stop.

Standard of Review

{¶6} It is well established that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259 (1991), paragraph two of the syllabus. Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* " 'In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.' " *State v. Williams*, 2024-Ohio 2307, ¶ 21 (3d Dist.), quoting *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

{¶7} By contrast, when reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In doing so, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered." *Id.* When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

### Evidence Presented

{¶8} Many of the facts in this case are not in dispute. On May 22, 2023, Sergeant Matthew Cook of the Ohio State Highway Patrol was conducting "traffic enforcement" on I-75 in Hancock County. (Tr. at 180). At approximately 7:50 a.m., Sergeant Cook was observing southbound traffic when he saw a dark-colored Dodge Charger that had window tint that he believed "was much darker than would be allowed by law." (*Id*. at 181). He then initiated a traffic stop of the Dodge Charger.

{¶9} Sergeant Cook approached the driver's-side of the vehicle and spoke with the driver—a female named Tavis. Rutledge, the registered owner of the Dodge Charger, was in the front passenger seat of the vehicle. After speaking with Tavis and Rutledge about the window tint, Sergeant Cook tested the window tint on the vehicle. He showed Rutledge and Tavis that the windows were significantly darker than allowed by law.

{¶10} Sergeant Cook testified that while he was speaking with Tavis and Rutledge he detected the "overwhelming odor of raw marijuana emitting from inside

the vehicle." (Tr. at 185-186). He then asked Tavis to step out of the vehicle so he could run her driving information and look for indicators of impairment.

{¶11} After conducting a pat-down of Tavis for weapons, Sergeant Cook had Tavis sit in the front passenger seat of his patrol car. Sergeant Cook asked Tavis about marijuana, and Tavis said she had last consumed marijuana approximately four hours before the traffic stop. She also admitted she had a small amount of marijuana in her purse in the front passenger area of the vehicle. Sergeant Cook testified that recreational marijuana was not yet legal in Ohio at the time of the traffic stop.

{¶12} Sergeant Cook indicated that he would only be issuing a written warning for the window tint. However, he also stated he was going to search the vehicle. Around this time, another trooper arrived at the scene to assist Sergeant Cook.

{¶13} Sergeant Cook returned to the Dodge Charger and asked Rutledge to step out of the vehicle. He asked if he could search Rutledge's person and Rutledge consented. A small amount of raw marijuana was found in Rutledge's pocket. Sergeant Cook escorted Rutledge to the rear of the police cruiser and had Rutledge sit in the cruiser with the door open. Sergeant Cook then went and searched the Dodge Charger while the other officer at the scene watched Rutledge and Tavis.

{¶14} In the trunk of the vehicle, Sergeant Cook located two backpacks or pieces of luggage. One of the bags had pill bottles inside that belonged to Rutledge.

Sergeant Cook also located multiple bags from a marijuana dispensary in Michigan. The bags had receipts stapled to them, some with Rutledge's name on the receipts and some with Tavis's name. Both Rutledge and Tavis also had cash on them, though it was unclear exactly how much.

{¶15} Sergeant Cook continued his search of the trunk and he located a smaller paper bag "kinda tucked on the wheel well of the trunk, closest to the left taillight." (Tr. at 208). Inside the paper bag were two smaller plastic bags, each containing multi-colored, triangular-shaped tablets. Sergeant Cook suspected that the tablets may contain ecstasy/MDMA or methamphetamine. The tablets were subsequently sent for lab testing and it was determined they contained methamphetamine and weighed over 54 grams. There were 197 tablets total.

{¶16} While the search was occurring, Rutledge sat in the backseat of the cruiser and he was recorded on the cruiser's camera. Just as Sergeant Cook was searching the trunk and pulling the paper bag with the tablets out, Rutledge was saying to himself that he needed a "miracle." Shortly thereafter he said "it's over" and cursed to himself.

{¶17} Rutledge also received a phone call while he was in the back seat of the cruiser and he answered it. During the call he said he got pulled over coming back from the dispensary. He said "it's over for me."

{¶18} Sergeant Cook returned to the rear of the cruiser and asked Rutledge about the pressed tablets that had a tesla logo. Rutledge said he did not know anything about them.

{¶19} After that conversation, Rutledge remained in the backseat of the cruiser and he sent some text messages on his phone, then took another phone call. On the second call, the caller can be heard asking Rutledge "They took the trippies?" (State's Ex. 1A). Rutledge responded indicating that yes, the "trippies" were gone, and he was going to be in serious trouble. Sergeant Cook testified that "trippies" was slang often associated with psychedelics or stimulants, but he was not familiar with it being used as a word for marijuana.

{¶20} The recordings from the cruiser and Sergeant Cook's body camera were played at trial and introduced into evidence. In addition, the parties stipulated to chain of custody of the tablets and that the tablets contained methamphetamine.

{¶21} Tavis indicated through counsel that she would be invoking her Fifth Amendment right against self-incrimination and that she would not answer any substantive questions.

{¶22} Although Rutledge argued that he did not have constructive possession of the tablets in his trunk, the jury found him guilty as charged.

Analysis

{¶23} Rutledge argues that the factfinder erred by determining that he constructively possessed the methamphetamine tablets in his trunk. He argues both that the evidence was insufficient to establish that he was in constructive possession of the tablets in his trunk, and that the factfinder's determination was against the weight of the evidence. To support his argument, he contends that he was not driving the vehicle at the time of the stop. He also contends that there were no markings on the package that directly connected him to the tablets. Further, he argues that the driver of the vehicle—Tavis—was not sufficiently investigated.

{¶24} In order to address Rutledge's argument, we must review the definitions of "possession" and "constructive possession." Revised Code 2925.01(K) defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶25} It is well established that "[p]ossession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). Unlike direct possession, a person has constructive possession if he is "able to exercise dominion and control over an item, even if [the individual] does not have immediate physical possession of it[.]" *State v. Brooks*, 2012-Ohio-5235, ¶ 46 (3d Dist.). For constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87 (1982). Constructive possession can be established by circumstantial evidence

alone. *Bustamante* at ¶ 25. The issue of whether a person charged with drug possession knowingly possessed a controlled substance is to be determined from all the attendant facts and circumstances available. *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

{¶26} At trial, the State established that the tablets containing methamphetamines were located in the trunk of Rutledge's vehicle. Although Rutledge was not driving at the time of the traffic stop, he was the registered owner of the vehicle and he was present during the traffic stop. In addition, the trunk contained items belonging to Rutledge, including prescription pills and marijuana purchased from a Michigan dispensary.

{¶27} Moreover, the backseat cruiser camera from Sergeant Cook's vehicle recorded multiple statements that Rutledge made that indicated he was aware of the presence of the methamphetamine. As soon as Sergeant Cook started searching the trunk, Rutledge stated that he needed a miracle. Then, after Sergeant Cook removed the bag with the pressed tablets, Rutledge could be heard saying that it was over for him. Rutledge also took a phone call from a male individual who asked Rutledge if the police took the "trippies." Rutledge responded that the police did take them.

{¶28} Based on the evidence presented, we find that, when looking at the evidence in a light most favorable to the State as we are directed on review, there was sufficient evidence presented for a factfinder to determine that Rutledge

constructively possessed the methamphetamines. Therefore his second assignment of error is overruled.

**{¶29}** Turning to Rutledge's first assignment of error, and his argument that his conviction was against the weight of the evidence, Rutledge argues that the methamphetamines were not within reach of him and that the State did not do any investigation into Tavis to determine if the methamphetamines were actually hers.

**{¶30}** Contrary to Rutledge's argument, which omitted any reference to his statements in the backseat of the cruiser, his statements indicate an awareness of the methamphetamines in his trunk, particularly given the timing that the statements were made. The methamphetamines were also in Rutledge's vehicle, in his trunk, with some of his other things.

**{¶31}** When combining all of these facts, we do not find that this is one of the rare cases where the factfinder clearly lost its way or that a manifest miscarriage of justice was created. This is particularly true given that the cases cited by Rutledge in his brief do not support a reversal here.

**{¶32}** For example, Rutledge cites *State v. Johnson*, 2025-Ohio-713 (3d Dist.), wherein we determined that the evidence supported a drug possession conviction where a defendant was the driver of a vehicle with drugs in it and, *inter alia*, the defendant made a reference that the charges could not be put on the girl in the vehicle who grabbed the drugs and put them into her pants. The girl testified that she was unaware who the drugs belonged to, but she was afraid they would be

uncovered. After examining all the facts and circumstances, we affirmed the drug possession conviction, even when the drugs were found on the person of another individual in the vehicle. These facts would actually support an affirmance here because the case analyzes the totality of the circumstances to determine constructive possession.

{¶33} Rutledge also cites *State v. Voll*, 2012-Ohio-3900 (3d Dist.), wherein we affirmed a possession of drug paraphernalia conviction. *Voll* involved constructive possession of a "crack pipe" that was between multiple people on the backseat of a vehicle. We determined that the evidence supported that *Voll* was in constructive possession of the pipe based on all the facts and circumstances. *Voll* is thus another case that directs us to look at all the circumstances surrounding potential possession and it does not support a reversal here.

{¶34} Finally, Rutledge cites *State v. Carpenter*, 2019-Ohio-58 (3d Dist.), as supporting reversal, but that case dealt with, *inter alia*, drug possession in a residence and it is even less relevant than the prior cases, particularly given that *Carpenter* also resulted in an affirmance. Rutledge has cited no case authority wherein an appellate court has determined in circumstances similar to the case *sub judice* that a conviction was against the weight of the evidence.

{¶35} In sum, after reviewing the record, we find that Rutledge has not established that his conviction was against the manifest weight of the evidence. Therefore, his first assignment of error is overruled.

-12-

*Conclusion*

**{¶36}** Having found no error prejudicial to Rutledge in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Hancock County Common Pleas Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

Case No. 5-24-43

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

_____
Juergen A. Waldick, Judge


_____
William R. Zimmerman, Judge


_____
John R. Willamowski, Judge

DATED:
/jlm

-14-